IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JAE PAK,                     )
                             )
        Plaintiff,        )
                             )
        v.               )     CIVIL ACTION NO. 5:24-cv-210 (MTT)
                             )
CEMEX SOUTHEAST, LLC,   )
                             )
        Defendant.   )
                             )

## ORDER

Plaintiff Jae Pak filed this action against his former employer, Cemex Southeast, LLC. ECF 1. Pak asserts claims for age and race discrimination under Title VII of the Civil Rights Act and under the Age Discrimination in Employment Act. *Id.* at 3. Cemex moves for summary judgment. ECF 47. For the following reasons, Cemex's motion for summary judgment (ECF 47) is **GRANTED**.

## I. BACKGROUND[1]

In May 2023, Cemex hired Pak, an Asian American male, to serve as a project manager at the Cemex Clinchfield Plant ("the Plant"). ECF 47-2 ¶ 1; ECF 47-3 ¶ 4. Cemex has workplace policies providing that employees are subject to corrective action for using "[a]busive, foul, offensive, or obscene language" in the workplace. ECF 47-2 ¶ 3; ECF 47-3 at 64. The Plant has a progressive discipline policy for these violations, starting with a verbal warning and escalating to a written warning, suspension, and

---

[1] These facts are drawn primarily from Cemex's Statement of Material Facts, which Plaintiff failed to contest, but only insofar as Cemex's facts are adequately supported by specific citations to the record. *See* Fed. R. Civ. P. 56(e)(2) and (3); *see also* M.D. Ga. Local Rule 56. That said, the Court will provide Pak the benefit of any doubt by considering facts raised in Pak's response brief that are supported by specific citations to the record, even though Pak has not properly responded to Cemex's Statement of Material Facts.

ultimately discharge. ECF 47-2 ¶ 3; ECF 47-3 at 64. But "[d]epending on the severity of the situation, the Company may, based on the facts and circumstances involved, increase the severity of the discipline to better align the discipline to the offense." ECF 47-3 at 63. Cemex's policies also provide that employees are subject to first-offense discharge for "[t]hreats, intimidation, or harassment, (including sexual harassment, immoral or indecent conduct) towards others." *Id.* Pak acknowledged his understanding and agreement to comply with Cemex's comprehensive workplace policies during onboarding. ECF 47-2 ¶ 2; ECF 47-3 ¶ 4. In addition, Pak attended a supervisor harassment training in early October 2023. ECF 47-2 ¶ 5; ECF 47-3 ¶ 6; ECF 49-1 at 116:15–117:12, 366. Despite Pak's training, Cemex quickly began receiving complaints that Pak violated the Plant's policies by using offensive language in an abusive manner.[2]

*Complaint One.* One week after Pak attended the supervisor harassment training, on October 10, 2023, James Kordsmeier, Cemex's Senior Project Manager and Pak's supervisor, received a complaint that Pak had used offensive language while berating a contractor about his work in the Plant. ECF 47-2 ¶ 7; ECF 47-4 ¶ 6; ECF 49-1 at 123:1–126:10, 367. Kordsmeier had a conversation with Pak and instructed him to refrain from using inappropriate, offensive, and berating language directed towards others in the workplace. ECF 47-2 ¶ 7; ECF 47-4 ¶ 7; ECF 49-1 at 123:1–126:10. Pak disputes the characterization of his behavior as "berating," but Pak agrees that

---

[2] Pak argues that some testimony concerning complaints made against him is hearsay. *See* ECF 52 at 8, 15. The statements made by complainants are not offered only to prove the truth of the matter asserted; they are also offered to establish Cemex's reason for terminating Pak's employment. They are admissible for that purpose. Further, because Pak admits the "truth" of most of the complaints in his deposition testimony, Pak's admissions of the conduct described in those complaints are admissible. The Court will note the extent to which Pak's deposition testimony supports the factual basis of each complaint.

Kordsmeier confronted him about a contractor's complaint that Pak had used offensive language while talking to him. *See* ECF 49-1 at 123:1–126:10.

*Complaint Two.* On October 23, 2023, Cemex conducted training near Pak's office. ECF 47-2 ¶ 9; ECF 47-4 ¶ 8; ECF 49-1 at 133:24–134:22, 367. Training attendees reportedly overheard Pak speaking very loudly and using offensive language. ECF 47-2 ¶ 9; ECF 47-4 ¶ 8; ECF 49-1 at 133:24–134:22, 367. Pak agrees that Kordsmeier issued a written warning concerning his use of loud and offensive language on October 23. Pak says he must have been talking loudly with an officemate. ECF 49-1 at 133:24–134:22. In response to this complaint, Kordsmeier issued a written warning to Pak and again instructed Pak to refrain from using offensive and berating language directed toward others in the workplace. ECF 47-2 ¶ 10; ECF 47-4 ¶ 8; ECF 49-1 at 367. Sammy Stewart, the Plant's human resources manager, also met with Pak to discuss the October 10 and October 23 incidents. ECF 47-2 ¶ 12; ECF 47-3 ¶ 9; ECF 49-1 at 155:1–17. During their conversation, Pak told Stewart that he must talk profanely to "those people," meaning contractors, because that is what they understand. ECF 47-2 ¶ 13; ECF 47-3 ¶ 9. Pak reiterates this sentiment in his deposition. ECF 49-1 at 24:7–24.

*Complaint Three.* On November 17, 2023, Cemex received another complaint that Pak had used inappropriate and offensive language directed towards Cemex employee, Christian Hendrix. ECF 47-2 ¶ 15; ECF 47-3 ¶ 10; ECF 47-4 ¶ 9; ECF 49-1 at 172:6–16. Pak yelled at Hendrix, "Don't mess with the f—king switch," or words to this effect. ECF 47-2 ¶ 16; ECF 49-1 at 175:6–9, 179:3–25. Pak agrees he said something like this to Hendrix. ECF 49-1 at 179:3–25.

*Complaints Four and Five.* On November 18 and 20, Cemex received additional complaints that Pak had used offensive language directed toward contractor Kenny Sikes and his employees.[3] ECF 47-2 ¶ 17; ECF 47-3 ¶ 11; ECF 47-4 ¶ 10.

*Complaint Six.* Cemex employee Antoine Carissan reported that on December 6, 2024, Pak used offensive language in an abusive manner towards Carissan in the Plant's control room. ECF 47-2 ¶ 25; ECF 49-1 at 193:23–194:12, 370; ECF 47-5 ¶ 5. Pak agrees he raised his voice against Carissan. *See* ECF 49-1 at 193:23–194:12. On December 12, 2023, Stewart met with Pak to discuss Carissan's complaint. ECF 47-2 ¶ 26; ECF 47-3 ¶ 13; ECF 49-1 at 195:18–197:20.

*Complaint Seven.* On Friday, January 26, 2024, Pak again got into a verbal altercation with Kenny Sikes after Pak asked Sikes to repair a loose boot scrub. ECF 47-2 ¶ 34; ECF 49-1 at 215:6–219:23. Sikes declined to repair the boot scrub, which led to, in Pak's words, a "heated moment." ECF 47-2 ¶ 35; ECF 49-1 at 219:1–2.

*Complaint Eight.* On January 29, 2024, Cemex again received a complaint that Pak had again used offensive language in an abusive manner, this time against Cemex employee Ronnie Thompson. ECF 47-2 ¶ 40; ECF 47-3 ¶ 17. Thompson said Pak entered the Plant's control room and yelled at Thompson that he (Pak) was "the f—ing Project Manager" and "designed the f—ing system." ECF 47-2 ¶ 41; ECF 47-3 ¶ 17; ECF 49-1 at 228:23–230:4. Pak does not recall whether he cursed at Thompson, but agrees he may have. ECF 49-1 at 230:1–4.

---

[3] In his response brief, Pak argues Sikes' accusations of profanity are attributable to a different Cemex employee. ECF 52 at 15. But Pak does not cite to anything in the record disputing Cemex's assertion that Cemex *received* complaints from Sikes concerning Pak's behavior. *See* ECF 52. Pak cites to Sikes' deposition, but Sikes' testimony confirms that Sikes complained about Pak's behavior to Cemex's HR. *See* ECF 52 at 15 (citing ECF 51-5 at 11, 20–21, 24:20–25, 29:19–21).

*Employment Termination.* Following Stewart's meeting with Pak on December 12, 2023, Kordsmeier initially considered placing Pak on a Performance Improvement Plan ("PIP") as a final opportunity for Pak to correct his behavior. ECF 47-2 ¶ 42; ECF 47-4 ¶ 12. But before the PIP was finalized, Cemex received complaints seven and eight. ECF 47-2 ¶ 43; ECF 47-4 ¶ 12. On February 1, 2024, Stewart informed Pak that Cemex was terminating his employment. ECF 47-2 ¶ 46; ECF 47-3 ¶ 20. Cemex did not replace Pak after terminating his employment. ECF 47-2 ¶ 55; ECF 47-3 ¶ 28.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of*

*Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (citation modified). "Alternatively, the movant may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A.  Title VII**

Direct evidence of intentional discrimination in employment cases is rare. The *McDonnell Douglas*[4] framework affords plaintiffs a way to marshal circumstantial evidence to defeat an employer's summary judgment motion. More generally, plaintiffs

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

can use the "convincing mosaic standard," which is really just "a stand-in for the Rule 56 summary judgment standard applied to employment discrimination." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025).

The *McDonnell Douglas* three-part framework first requires a plaintiff to establish a prima facie case of discrimination. A plaintiff makes out a prima facie case of employment discrimination by showing:

> (1) he is a member of a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class.

*Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 799 (11th Cir. 2016) (citing *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015)).

If a plaintiff establishes a prima facie case, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise "a genuine issue of fact as to whether it discriminated against the plaintiff." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (citation modified).

If the employer provides an adequate reason, a plaintiff then "has the opportunity to demonstrate that the employer's proffered rationale is pretextual." *Ismael*, 161 F.4th at 759. To show pretext, a plaintiff must show that the employer's reason was false and that discrimination was the real reason for the adverse action. *Id.* at 761 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Of course, this showing may be

made by circumstantial evidence. Indeed, the pretext step of *McDonnell Douglas* is a "*subset* of potentially relevant circumstantial evidence." *Id.* at 762.

If a plaintiff hasn't shown (or hasn't attempted to show) pretext, the Court turns to the convincing mosaic standard to determine if the record, viewed in a light most favorable to the plaintiff, would allow a jury to infer intentional discrimination. *Id.* at 764. Notably, the convincing mosaic standard cuts both ways. Even if a plaintiff successfully navigates *McDonnell Douglas,* an employer may yet be entitled to summary judgment if the record establishes that "no rational jury could conclude that the termination was discriminatory." *See Motley v. Fulton Cty.,* Ga., 815 F.3d 733, 734 (11th Cir. 2016) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)) (other citations omitted).

### 1. Prima facie case

Cemex argues Pak cannot establish the fourth element required to make out a prima facie case of race discrimination because Pak cannot show he received less favorable treatment than a similarly situated person outside of his protected class. ECF 47-1 at 11–12. Pak does not argue that he was replaced by someone outside of his protected class. *See* ECF 52. Thus, to establish a prima facie case, Pak must show he received less favorable treatment than a similarly situated person outside of his protected class by pointing to a comparator. A valid comparator must be someone "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1227 (11th Cir. 2019). "Ordinarily," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct)," "will have been subject to the same employment policy, guideline, or rule," will "have been under the jurisdiction of the

same supervisor," and "will share the plaintiff's employment or disciplinary history." *Id*. at 1227–28.

As best the Court can tell, Pak does not argue in his response brief that he received less favorable treatment than any similarly situated person outside of his protected class. *See* ECF 52. More generally, Pak argues Cemex had a culture of using coarse language and points to several individuals who admit either using curse words or hearing swearing at Cemex. *Id.* at 6–7. He also points to an instance where a man made an inappropriate joke using the F-word. *Id.* at 6; ECF 47-2 ¶ 51; ECF 49-1 at 92:3–18. To the extent Pak suggests these individuals "engaged in the same basic conduct (or misconduct)" by cursing or making an inappropriate joke, the Court disagrees. Berating and cursing *at others* on the jobsite are not the same as general swearing or telling inappropriate jokes. In any case, Pak has not identified evidence, nor does he argue, that these individuals were "subject to the same employment policy, guideline, or rule," were "under the jurisdiction of the same supervisor," or that they shared "the plaintiff's employment or disciplinary history." *See* ECF 52; *Lewis*, 918 F.3d at 1227–28.[5] Because Pak has not pointed to anything in the record suggesting he received less favorable treatment than someone outside of his protected class, who was similarly situated in all material respects, Pak has not made a prima facie case of race discrimination.

---

[5] Pak also suggests contractors from Sikes Construction engaged in safety violations yet were not properly disciplined. ECF 52 at 11–13. The Court's analysis concerning individuals at the Plant who may have cursed at Cemex also extends to these contractors who may have committed safety violations. Pak has not shown these individuals were similarly situated to Pak in all material respects.

## 2. Legitimate, nondiscriminatory reason

Even if Pak could make out a prima facie case, Cemex has proffered a legitimate, nondiscriminatory reason for the Plaintiff's termination. The Plant has a policy against using "[a]busive, foul, offensive, or obscene language" in the workplace, and employees are subject to immediate discharge for "[t]hreats, intimidation, or harassment, (including sexual harassment, immoral or indecent conduct) towards others." ECF 47-3 at 63–64; ECF 47-2 ¶ 3. Cemex received numerous complaints that Pak used offensive language in an abusive manner, and using offensive language in an abusive manner is a legitimate, nondiscriminatory reason for termination.

## 3. Pretext; convincing mosaic of circumstantial evidence

The Court next considers whether Pak can show Cemex's stated legitimate, nondiscriminatory reason for terminating Pak's employment was pretextual. Again, "[t]o show pretext, a plaintiff must show '*both* that the [employer's] reason was false, *and* that discrimination was the real reason' for the adverse action." *Ismael*, 161 F.4th at 761 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Pak has not pointed to any evidence suggesting that Cemex's reason for terminating his employment was false. Rather, Pak quibbles with the sufficiency of that reason, arguing that he never intended to belittle or disrespect Cemex employees and that his use of offensive language was situationally appropriate. ECF 52 at 8. But the question is not whether Cemex wisely terminated Pak based on the many complaints about his use of offensive language and behavior, but rather, whether the asserted reason for Pak's termination was false and whether the real reason for Pak's termination was discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.1984) ("[An] employer may fire an employee

-10-

for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Pak also asserts, in his response brief, that Kordsmeier orchestrated his termination and wholly fabricated charges of profanity and abusive treatment of contractors. ECF 52 at 5. Pak speculates that Kordsmeier may have targeted Pak because Pak made a comment about eventually taking Kordsmeier's job. *See id*. But Pak concedes that complaints were made against him, and, as discussed, Pak's deposition testimony largely confirms his profane belligerence. *Id.* at 8. Indeed, Pak even argues that such behavior is an appropriate management tool. *Id.* at 7–8. And even if there was merit to Pak's opinion that Kordsmeier acted to protect his job, that does not show that Pak's race was a factor in his termination.

Pak also speculates that Sikes, the contractor who reported Pak's inappropriate behavior, bore him ill will, and this raises "serious concerns about retaliatory intent and procedural manipulation." *Id.* at 9. Sikes' alleged animus does not suggest "retaliatory intent" on the part of Cemex, and, in any event, Pak does not allege that Sikes' animus was based on race. *See id*.

Pak also argues that Cemex's former Vice President of Human Resources, Kent Kerr, told Pak that filing a racial discrimination[6] complaint with the company is a "sure way to get fired." *See id.* at 10. Kerr's alleged statement, as Pak acknowledges, is not admissible and, in any event, is not evidence of race discrimination.[7] *See id.* at 10. In

---

[6] Shortly after Stewart discussed Carissan's complaint with Pak, Pak filed a racial discrimination complaint against Carissan. *See* ECF 47-2 ¶ 28; ECF 49-1 at 198:15–202:4, 371. Pak also claims, without a record citation, that he filed a racial discrimination complaint against Cemex employee Doug Holder in August 2023. *See* ECF 52 at 9.

[7] Pak did not pursue his effort to secure Kerr's deposition testimony. It is appropriate to note here that Pak is an experienced employment discrimination litigator. Previous employers have fired or disciplined Pak

short, there is no evidence that race discrimination was the true reason for Pak's

termination.

In what the Court construes as a final effort to show pretext, Pak argues that

Kordsmeier delayed advising Pak of the Performance Improvement Plan because he

was "waiting for a triggering incident that could justify bypassing the plan and

proceeding directly to termination." *Id.* at 9. In support, Pak directs the Court to

paragraph twelve of Kordsmeier's declaration, which states:

> On or about December 12, 2023, after discussing Pak's behavior with
> Sammie Stewart Clinchfield Plant's Human Resources Manager, I originally
> intended to place Pak on a Performance Improvement Plan ("PIP"). Before
> the PIP was finalized, Pak was involved in the subsequent incidents on
> January 26 and 29, 2024. Due to repeated counseling Cemex had already
> provided to Pak to cease using offensive language in an abusive manner, I
> determined that a PIP would not correct Pak's behavior and Mr. Stewart
> agreed.

ECF 47-4 ¶ 12. While Kordsmeier's statement supports Pak's assertion that he was not

ultimately placed on a PIP, it does not support Pak's assertion that Kordsmeier delayed

advising Pak of the PIP because he was waiting for a triggering incident. More to the

point, it does not show that Kordsmeier terminated Pak's employment because of his

race.

---

for inappropriate conduct similar to his conduct here. Almost invariably, Pak has responded with litigation. After the Wisconsin Department of Veterans Affairs terminated Pak's employment for yelling at a coworker and using a closed fist to push another coworker, Pak filed suit against the Wisconsin VA alleging, among other things, race discrimination. *See* ECF 47-2 ¶¶ 56, 57; ECF 49-1 at 29:14–30:10; 37:5–14; 69:8–13; *Pak v. McDonough*, 2023 WL 2043527, at *1 (W.D. Wis. Feb. 16, 2023). After the Indiana VA terminated Pak's employment, Pak filed an EEOC charge against the Indiana VA for race discrimination. *See* ECF 47-2 ¶¶ 58, 59; ECF 49-1 at 35:17–38:20.

The Court also notes that Pak does not bring a retaliation claim, nor does he argue that circumstantial evidence of retaliation for filing a complaint of racial discrimination raises an issue of discrimination based on race under Title VII. *See* ECF 1 at 4; ECF 52.

In addition, the undisputed facts show that Kordsmeier and HR repeatedly warned Pak that his language, directed at others, was unacceptable, and that Cemex provided Pak multiple opportunities to correct his behavior prior to terminating his employment. *See* ECF 47-2 ¶¶ 8, 10, 12, 26; ECF 47-3 ¶¶ 9, 13; ECF 47-4 ¶¶ 7, 8; ECF 49-1 at 123:1–126:10, 155:1–17, 195:18–197:20, 367; *see also* ECF 52 at 7 ("Plaintiff was repeatedly advised by colleagues–including HR Manager Sammy Stewart—to be cautious in his speech. Stewart warned that even a single profane word could result in termination."). That Pak was not placed on a PIP before Cemex terminated his employment does not create a question of discriminatory intent.

In sum, Pak has not shown pretext.

The Court next turns to whether the record, viewed in the light most favorable to Pak, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Cemex. *Ismael*, 161 F.4th at 764. A plaintiff can always survive summary judgment by creating a triable issue concerning the employer's discriminatory intent. *See id.* at 764–65; *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Convincing mosaic evidence may include: "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citation modified); *see also Ismael*, 161 F.4th at 764 ("[a] showing of pretext (or lack thereof) would certainly be relevant. But a plaintiff's inability to disprove the defendant's rationale cannot be the sole grounds for summary judgment.").

-13-

The Court has discussed in detail all relevant evidence. That evidence shows that Cemex fired Pak because of well-documented abusive behavior; nothing in the record would allow a reasonable jury to conclude that Cemex fired Pak because of his race. Nevertheless, Pak, in his response brief, argues Cemex had a pattern of discriminating against minorities. *See* ECF 52 at 10–12. Pak names seven employees whom he says Cemex terminated between 2021 and 2024, some of them female and some of them minority, and argues that Cemex engaged in a pattern of discriminatory employment decisions. *See id.* at 11. But Pak does not point to any evidence in the record concerning the circumstances of these employment terminations. *See id.* Because Pak has not pointed to any evidence suggesting Cemex terminated these employees for discriminatory reasons, Pak's mere listing of names is insufficient to raise a triable issue of discriminatory intent.[8]

In sum, Pak has not successfully navigated the *McDonnell Douglas* framework, nor has he pointed to any evidence creating a triable issue of discriminatory intent. Accordingly, the Court **GRANTS** Cemex's motion for summary judgment on Pak's Title VII claim of discrimination based on race.

---

[8] Pak argues Cemex did not provide him with information he requested during discovery concerning these witnesses and that Cemex delayed the discovery process to prevent Pak from taking the depositions of other potential witnesses as well. *See* ECF 52 at 11–12, 14–15. Pak aggressively and broadly pursued discovery. As the discovery deadline approached, he moved to compel and asked the Court to extend the discovery period. ECF 25. The Court granted that motion in large part, but some of his discovery requests were far too broad. For example, he requested "identification of maintenance staff who resigned or were terminated during the 2023–2024 period" and "information on individuals who may have experienced racial or gender-based discrimination at CEMEX." ECF 25 at 3, 5. Still, the Court agreed to a discovery [limited to plant] extension. ECF 34. The Court also notes Pak has not properly raised an issue under Federal Rule of Civil Procedure 56(d) to the effect that he is unable to present facts essential to justify his position.

## B.  Age Discrimination

Cemex argues that Pak has failed to exhaust his administrative remedies because he did not file a complaint with EEOC concerning his age discrimination claim. ECF 47-1 at 18–19. Pak does not respond. *See* ECF 52. A "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,' but 'the scope of an EEOC complaint should not be strictly interpreted.'" *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 301 (11th Cir. 2020) (quoting *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). Pak's EEOC charge was limited to his race discrimination claim, and Pak does not argue otherwise in his response brief. *See* ECF 52; ECF 49-1 at 382; ECF 47-2 ¶ 53.

Accordingly, Cemex's motion for summary judgment as to Pak's age discrimination claim is **GRANTED**.

### IV. CONCLUSION

Cemex's motion for summary judgment (ECF 47) is **GRANTED** as to Pak's age discrimination claim and Title VII claim of discrimination based on race.

**SO ORDERED**, this 18th day of March, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
